UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X   Case No.  21-cv-4087

ERIC E. GARVIN,

**COMPLAINT**

Plaintiff,

-against-                                        ***PLAINTIFF DEMANDS***
                                                  ***A TRIAL BY JURY***

THE CITY OF NEW YORK,

Defendant.
-------------------------------------------------------------------------X

　　　　Plaintiff, ERIC GARVIN, by his attorneys, PHILLIPS & ASSOCIATES, PLLC, hereby

complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1.　　Plaintiff complains pursuant to the Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. § 2000e *et seq*. ("Title VII"), 42 U.S.C. § 1981 ("1981"), the New York State

Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"), and the

New York City Human Rights Law, New York City Administrative Code § 8-502(a), *et*

*seq* ("NYCHRL"). Plaintiff seeks damages to redress the injuries Plaintiff has suffered as

a result of being **discriminated against and retaliated against** and being subjected to a

racially **hostile work environment** by his employer solely due to his race (Black).

## JURISDICTION AND VENUE

2.　　Jurisdiction of this Court is proper under 42 U.S.C. §§ 2000e-5(f)(3) and 1981, and 28

U.S.C. §§ 1331 and 1343 as it arises under the laws of the United States and is an action to

recover damages or to secure equitable or other relief under an Act of Congress providing

for the protection of civil rights.

3.　　The Court has supplemental jurisdiction over Plaintiff's claims brought under state and city

law pursuant to 28 U.S.C. § 1367.

4.    Venue is proper in this district in that a substantial part of the events or omissions giving

rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C.

§ 1391(b).

## PROCEDURAL PREREQUISITES

5.    Plaintiff filed a Charge of Discrimination upon which this Complaint is based with the

Equal Employment Opportunity Commission ("EEOC").

6.    Plaintiff received a Notice of Right to Sue from the EEOC, dated March 13, 2021, concerning

the herein charges of discrimination.  A copy of the Notice is annexed hereto as Exhibit A.

7.    This Action is being commenced within 90 days of receipt of said Notice of Right to Sue.

## PARTIES

8.    At all times relevant hereto, Plaintiff is and was a resident of the State of New York and was

a "person" and an "employee" entitled to protection as defined by Title VII, 1981, the

NYSHRL, and the NYCHRL.

9.    At all times relevant hereto, Defendant CITY OF NEW YORK and the Mayor's Office of

Criminal Justice, (hereinafter, "CITY'S MOCJ"), was and is a municipal agency duly

existing pursuant to, and by virtue of, the laws of the State of New York and maintains a

principal place of business at 1 Centre Street, 10th Floor, New York, New York 10007

(hereafter "Office").

10.    At all times relevant hereto, Plaintiff was an employee of Defendant CITY'S MOCJ.

2

**MATERIAL FACTS**

11.   In or about May 2016, Plaintiff became employed by the Mayor's Office of Criminal Justice ("MOCJ"), City of New York, as a Community Coordinator.

12.   In February 2017, Plaintiff was featured in a news article on diversity, entitled "Speaking Out: Diverse Black Male Voices of City Hall," in which he was quoted as saying, "As a law graduate, I've grappled with the reality that law is one of the least diverse professions in the nation…" (the "Article").

13.   A day or two after the Article was published, Plaintiff's then-supervisor, Eric Cumberbatch, and other members of management questioned Plaintiff about his role in the Article. Cumberbatch then told Plaintiff that if Plaintiff ever spoke out publicly about race issues again, he would "crush" him.

14.   Upon information and belief, MOCJ's management, including Cumberbatch, perceived Plaintiff's statement in the Article as an attack on the lack of diversity at MOCJ.

15.   In or about early to mid-2017, Plaintiff was assigned to cover both Queens and Staten Island although he had no community connection to Queens and did not live near Queens. This resulted in late nights for Plaintiff, who had to travel back and forth, using public transit, between two transit-starved boroughs with no shared borders. Plaintiff believed the assignment to be part of a retaliatory effort to make his job more difficult.

16.   In late 2017, Plaintiff was offered a so-called "promotion" which was not, in fact, a promotion. The position he was offered was a lateral move to a new team. Plaintiff declined the transfer. Plaintiff then proposed several alternative positions for which he was fully

qualified and which would be actual promotions. Management, however, refused to entertain these suggestions.

17. From 2017 through the present date, performance reviews at MOCJ have been conducted late or not at all, and criteria for promotions have been unclear. As a result, white employees receive promotions that, upon information and belief, are either not merit-based or are made at the expense of well-qualified employees of color.

18. In late 2017 or early 2018, MOCJ hired Anna Calabrese, a white woman, as Director of Culture Change and Re-entry.

19. Despite Plaintiff's being qualified for the position -- including having a Juris Doctorate degree, ample experience, and strong community ties relevant to the work -- Plaintiff was not considered for the position of Director of Culture Change and Re-entry. Indeed, Plaintiff was not even given an opportunity to interview for the position.

20. On or about March 23, 2018, Plaintiff was given a so-called "promotion" but retained the same title, Community Coordinator, as he had held previously. His salary was raised by $5,000.

21. On or about September 24, 2018, Plaintiff was denied a Video Production and Photography fellowship position to which he had applied within MOCJ and for which he was qualified. Although he was denied the fellowship position, he was tasked with performing work in support of the position—specifically, he was instructed to take photos using his own camera.

22. In or around November 2018, Plaintiff was tasked with traveling repeatedly to Farmingdale, New York, for a project that could easily have been assigned to someone

who lived closer to Long Island. Plaintiff believed the assignment to be part of the retaliatory effort to make his job more difficult.

23.     In late 2017 or early 2018, Eric Cumberbatch informed Plaintiff that, going forward, only senior staff could attend certain meetings relevant to Plaintiff's work, thus excluding Plaintiff.

24.     In or about December 14, 2018 and January 2019, Plaintiff was deliberately excluded from conference calls and meetings concerning the project for which Plaintiff had repeatedly traveled to Farmingdale, New York.

25.     In January, March, April, May and June 2019, Plaintiff was deliberately excluded from further meetings and calls relevant to his work and/or professional experience.

26.     In or about September 2019, Plaintiff was transferred to the "re-entry" team within MOCJ, which assists formerly incarcerated individuals with re-entering society. Although Plaintiff was given the title "Senior Program Manager, Re-entry and Culture Change" the title change was not a true promotion, as no one else on the re-entry team was designated as being subordinate to him and he was given no actual authority, nor access to resources.

27.     In the new position, Plaintiff reported to Anna Calabrese, Director of Culture Change and Re-entry.

28.     Plaintiff was the only Black employee on the re-entry team.

29.     During the period of approximately Fall 2017 through the present date, Plaintiff has, on multiple occasions, complained to an employee in Defendant's Human Resources department, Lakisha Grant, of racial discrimination and racial bias within MOCJ. Ms.

Grant did not dispute that these problems existed at MOCJ. However, no action was taken to address the problem.

30.     In, upon information and belief, retaliation for making such complaints, and his general outspokenness about racial injustice, Plaintiff has been set up to fail as "Senior Program Manager." For example, although Plaintiff has made repeated requests for resources to be allocated to the Reentry Executive Committee to facilitate his work on the re-entry team, management has failed to provide the requested resources.

31.     Furthermore, Plaintiff has been excluded from numerous significant meetings, conference calls, and projects on the re-entry team. For just one example out of many, in or about October 2019, his supervisor Anna Calabrese conducted a "Culture Change Co-Chair Meeting," to which Plaintiff was not invited, despite having Culture Change in his title and being on the Culture Change team.

32.     In addition, Plaintiff was regularly excluded from meaningful participation in significant decisions, in which his white colleagues were included, even when Plaintiff had contributed relevant work.

33.      On more than one occasion, when Plaintiff voiced an opinion that differed from those of white colleagues, he -- a Black man -- was reprimanded for supposedly "trying to disenfranchise" his white colleagues.

34.     In or about March 2020, Plaintiff was tasked with assisting with a project on Rikers Island that entailed mixing with the prison population there and thus potentially exposing himself to COVID-19. Plaintiff felt he had no choice but to offer his assistance with this project when his white colleagues, except one, refused to help.

35.   In late June 2020, during a call with Dana Kaplan, Deputy Director of Close Rikers and Justice Initiatives, Plaintiff complained as follows, "I think MOCJ has issues with race. It has issues with white supremacy." He also said MOCJ was "operating like a plantation."

36.   After Plaintiff made this complaint, Defendant's efforts to exclude him from significant projects increased.

37.   For example, management excluded Plaintiff from participating in press pieces that would provide him with positive exposure, including, in one case, a press piece about an organization with which Plaintiff worked closely, the head of which organization had specifically asked that Plaintiff be included.

Defendant's Admissions of Racism and White Supremacy Within MOCJ

38.   When Plaintiff complained to HR's Lakisha Grant of racial bias and discrimination at MOCJ, Ms. Grant indicated she had heard similar complaints from other employees. She did not dispute that racism and racial bias is a problem at MOCJ.

39.   On or about June 11, 2020, in a text exchange with his supervisor Anna Calabrese, Plaintiff stated that, "People have behaved in disgustingly racist and/or biased ways during this crisis [at MOCJ]." Ms. Calabrese responded, "I hear you. *I agree with you*. And I am committed to do all I can to fight against the systems of *white supremacy within our office* and beyond" (emphasis added).

40.   In an additional text message on June 11, 2020, Ms. Calabrese said to Plaintiff, "I really want you to take a break from the toxic MOCJ culture."

41.   On a call on or about September 15, 2020, Ms. Calabrese referred to "the systemic racism in our office," thus acknowledging the existence of systemic racism at Defendant.

7

42.     Despite his reports of racism within MOCJ, his many conversations with an HR representative about racism and racial bias within MOCJ, and Defendant's own admissions that MOCJ has a problem with racism and white supremacy, Defendant has taken no action to correct the problem, and has retaliated against Plaintiff for reporting it."

43.     Plaintiff continues to experience a hostile work environment.

44.     Despite being aware of the racism and discrimination, Defendant has failed to take appropriate remedial action and properly investigate Plaintiff's multiple complaints of discrimination and hostile work environment.

45.     Defendant knew or should have known of the discriminatory and retaliatory conduct and failed to take corrective measures within its control.

46.     Defendant and its staff, each collectively and individually, condoned, ratified, and supported the discriminatory work environment against Plaintiff.

47.     The above are just some examples of how Defendant and their employees regularly and continually harassed Plaintiff while employing Plaintiff.

48.     Plaintiff was treated this way solely due to Plaintiff's race (Black) and because of his objections to the discriminatory and retaliatory actions taken against Plaintiff.

49.     Defendant actions and conduct were intentionally and intended to harm Plaintiff.

50.     As a result of the hostile work environment and harassment created and perpetuated by Defendant, Plaintiff suffered and continues to suffer emotional distress.

51.     Defendants unlawfully racially harassed, humiliated, embarrassed, degraded, and belittled Plaintiff.

52.     Plaintiff has suffered damages as well as future pecuniary losses, emotional pain, suffering,

        inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

53.     Defendants acted maliciously, willfully, outrageously, and with full knowledge of the law.

54.     As such, Plaintiff demands punitive damages as against all Defendants, jointly and

        severally.

**First Cause of Action for Discrimination**
**Under Title VII of the Civil Rights Act of 1964**
**(Not Against Individual Defendant)**

55.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

        this complaint.

56.     Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1) provides,

        in pertinent part, that:

> It shall be an unlawful employment practice for an employer… to
> discharge any individual, or otherwise to discriminate against any
> individual with respect to his compensation, terms, conditions, or
> privileges of employment, because of such individual's *race*, color,
> religion, sex, or national origin.

57.     Defendant MSHS engaged in unlawful employment practices prohibited under 42 U.S.C.

        §2000e *et seq*., by discriminating against Plaintiff solely based on her race.

58.     Defendant MSHS violated the section cited as set forth.

59.     Plaintiff is entitled to the maximum amount allowed under this statute/law.

**Second Cause of Action for Retaliation**
**Under Title VII of the Civil Rights Act of 1964**
**(Not Against Individual Defendant)**

60.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

        this complaint.

61.    <u>Title VII of the Civil Rights Act of 1964</u>, *as amended*, <u>42 U.S.C.</u> §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

62.    Defendant MSHS engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to unlawful employment practices.

63.    Plaintiff is entitled to the maximum amount allowed under this statute/law.

**Third Cause of Action for Discrimination
Under the 42 U.S.C. § 1981 (As Amended)
(Against All Defendants)**

64.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

65.    42 U.S.C. § 1981 states in relevant part as follows:

(a) Statement of equal rights

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

66.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by discriminating against Plaintiff because of her race (Black).

10

67.     Plaintiff is entitled to the maximum amount allowed under this ordinance.

## Fourth Cause of Action for Retaliation
## Under the 42 U.S.C. § 1981 (As Amended)
## (Against All Defendants)

68.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

69.     By the acts and practices described above, Defendant retaliated against Plaintiff for her opposition to unlawful discrimination under 42 U.S.C. §1981.

70.     Defendants acted with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

71.     Plaintiff is entitled to the maximum amount of damages allowed under this statute.

## Fifth Cause of Action for Discrimination
## Under the New York State Executive Law
## (Against all Defendants)

72.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

73.     New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

74.     Defendants violated the section cited herein as set forth.

**Sixth Cause of Action for Discrimination**
**Under the New York State Executive Law**
**(Not Against Corporate Defendant)**

75.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

        this complaint.

76.     New York State Executive Law § 296(6) provides that it shall be an unlawful

        discriminatory practice: "For any person to aid, abet, incite, compel or coerce the doing of

        any acts forbidden under this article, or attempt to do so."

77.     Defendant GUARENO engaged in an unlawful discriminatory practice in violation of New

        York State Executive Law § 296(6) by aiding, abetting, inciting, compelling and coercing

        the discriminatory and retaliatory conduct.

**Seventh Cause of Action for Retaliation**
**Under the New York State Executive Law**
**(Against All Defendants)**

78.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

        this complaint.

79.     New York State Executive Law § 296(1)(e) provides that, "It shall be an unlawful

        discriminatory practice for any person engaged in any activity to which this section applies

        to retaliate or discriminate against any person because he or she has filed a complaint,

        testified, or assisted in any proceeding under this article."

80.     Defendants violated the section cited herein as set forth.

81.     Plaintiff is entitled to the maximum amount allowed under this statute.

**Eighth Cause of Action for Discrimination**
**Under the New York City Administrative Code**
**(Against all Defendants)**

82.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

83.     The New York City Administrative Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer
> or an employee or agent thereof, because of the actual or perceived
> age, race, creed, color, national origin, gender, disability, marital
> status, partnership status, caregiver status, sexual orientation,
> uniformed service, or alienage or citizenship status of any person,
> to refuse to hire or employ or to bar or to discharge from
> employment such person or to discriminate against such person in
> compensation or in terms, conditions or privileges of employment.

84.     Defendants violated the section cited herein as set forth.

**Ninth Cause of Action for Discrimination**
**Under the New York City Administrative Code**
**(Not Against Corporate Defendant)**

85.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

86.     The New York City Administrative Code § 8-107(6) provides that it shall be unlawful

discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of

any of the acts forbidden under this chapter, or attempt to do so."

87.     Individual Defendant GUARENO engaged in an unlawful discriminatory practice in

violation of New York City Administrative Code § 8-107(6) by aiding, abetting, inciting,

compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

88.     Individual Defendant GUARENO violated this statute as set forth.

13

**Tenth Cause of Action for Retaliation
Under the New York City Administrative Code
(Against All Defendants)**

89.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

90.     The New York City Administrative Code § 8-107(7) provides that it shall be unlawful

discriminatory practice: "For an employer . . . to discriminate against any person because

such person has opposed any practices forbidden under this chapter. . ."

91.     Defendants violated the section cited herein as set forth.

92.     Plaintiff is entitled to the maximum amount allowed under this statute.

**Eleventh Cause of Action for Vicarious Liability
Under the New York City Administrative Code
(Not Against Individual Defendant)**

93.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

94.     The Administrative Code of City of New York § 8-107(13) provides for employer liability

for discriminatory conduct by an employee, agent or independent contractor.  This sub-

section states:

> a.  An employer shall be liable for an unlawful discriminatory practice
> based upon the conduct of an employee or agent which is in violation of any
> provision of this section other than subdivisions one and two of this section.
>
> b.  An employer shall be liable for an unlawful discriminatory practice
> based upon the conduct of an employee or agent which is in violation of
> subdivision one or two of this section only where: (1) the employee or agent
> exercised managerial or supervisory responsibility; or (2) the employer
> knew of the employee's or agent's discriminatory conduct, and acquiesced
> in such conduct or failed to take immediate and appropriate corrective
> action; an employer shall be deemed to have knowledge of an employee's
> or agent's discriminatory conduct where that conduct was known by another
> employee or agent who exercised managerial or supervisory responsibility;

14

or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c. An employer shall be liable for an unlawful discriminatory practice committed  by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

95.   Defendant MSHS violated the section cited herein as set forth.

## **PUNITIVE DAMAGES**

96.   Plaintiff is entitled to the maximum amount allowed under this statute/law.

97.   Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

98.   As such, punitive damages are appropriate as a result of Defendant's above-described conduct and Plaintiff demands Punitive Damages as against Defendant.

## **JURY DEMAND**

99.   Plaintiff hereby demands a jury trial.

   **WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, New York State Human Rights Law, and the New York City Administrative Code, in that Defendants discriminated against Plaintiff based on Plaintiff's race (Black), retaliated against Plaintiff due to her complaining of discrimination and created a hostile work environment;

B.  Awarding damages to Plaintiff for all benefits resulting from Defendants' unlawful harassment, discrimination, retaliation, and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C.  Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D.  Awarding Plaintiff damages for damages which such employment entails;

E.  Awarding Plaintiff punitive damages;

F.  Awarding Plaintiff liquidated damages;

G.  Awarding Plaintiff prejudgment interest;

H.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

I.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

Dated:  New York, New York
        May 6, 2021

                                          **PHILLIPS & ASSOCIATES,**
                                          **ATTORNEYS AT LAW, PLLC**


                              By:  _____/s/_____
                                   Joshua M. Friedman
                                   Steven R. Filosa
                                   *Attorneys for Plaintiff*
                                   585 Stewart Avenue, Suite 410
                                   Garden City, New York 11530
                                   (212) 248-7431
                                   jfriedman@tpglaws.com
                                   sfilosa@tpglaws.com

16