UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X Docket No. 21 Civ. 4087 (LJL)

ERIC E. GARVIN,

                       **VERIFIED AMENDED COMPLAINT**

        Plaintiff,

    -against-

THE CITY OF NEW YORK,              *PLAINTIFF DEMANDS A TRIAL BY JURY*

        Defendant.
-------------------------------------------------------------------X

Plaintiff, ERIC GARVIN, by his attorneys, KEITH WHITE, PLLC, hereby amends his Complaint, upon information and belief, as follows:

**NATURE OF THE CASE**

1. Plaintiff complains pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"), the New York City Human Rights Law, New York City Administrative Code § 8-502(a), *et seq* ("NYCHRL") and the anti-retaliation provisions of New York's Whistleblower Statute under New York Labor Law §740, et seq. ("NYLL"). Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of being **discriminated against and retaliated against** and being subjected to a racially **hostile work environment** by his employer due to his race (Black and Latino) and awareness efforts for black and brown individuals and minority-led organizations who contract with New York City, specifically his advocacy for members of New York City's Crisis Management System (CMS) and/or reentry

contract vendors. Plaintiff is also seeking damages Plaintiff has suffered as a result of being retaliated against for disclosing, objecting to and lawfully refusing to participate in activities, policies and practices of the Defendant that endangered the public health and safety and that amounted to contractual malfeasance, abuses and/or misuses of public (taxpayer) dollars regarding several "emergency" and/or "crisis"-related Health and Human Services contracts.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. §§ 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343 as it arises under the laws of the United States and is an action to recover damages or to secure equitable or other relief under an Act of Congress providing for the protection of civil rights.

3. The Court has supplemental jurisdiction over Plaintiff's claims brought under state and city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

5. Plaintiff filed a Charge of Discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated March 13, 2021, concerning the herein charges of discrimination. A copy of the Notice is annexed hereto as Exhibit A.

7. This Action was commenced within 90 days of receipt of said Notice of Right to Sue.

## PARTIES

8. At all times relevant hereto, Plaintiff is and was a resident of the State of New York and was a

"person" and an "employee" entitled to protection as defined by Title VII, the NYSHRL, the NYCHRL and the NYLL.

9. At all times relevant hereto, Defendant CITY OF NEW YORK and the Mayor's Office of Criminal Justice, (hereinafter, "CITY'S MOCJ"), was and is a municipal agency duly existing pursuant to, and by virtue of, the laws of the State of New York and maintains a principal place of business at 1 Centre Street, 10th Floor, New York, New York 10007 (hereafter "Office").

10. At all times relevant hereto, Plaintiff was an employee of Defendant CITY'S MOCJ.

## MATERIAL FACTS

11. In or about May 2016, Plaintiff became employed by the Mayor's Office of Criminal Justice ("MOCJ"), City of New York, as a Community Coordinator.

12. In February 2017, Plaintiff was featured in a news article on diversity, entitled "Speaking Out: Diverse Black Male Voices of City Hall," in which he was quoted as saying, "As a law graduate, I've grappled with the reality that law is one of the least diverse professions in the nation…" (the "Article").

13. A day or two after the Article was published, Plaintiff's then-supervisor, Eric Cumberbatch, and other members of management questioned Plaintiff about his role in the Article. Cumberbatch then told Plaintiff that if Plaintiff ever spoke out publicly about race issues again, he would "crush" him.

14. During the period of approximately Fall 2017 through March 2021, Plaintiff had, on multiple occasions, complained to an employee in Defendant's Human Resources department, Lakisha Grant, of racial discrimination and racial bias within MOCJ. Ms. Grant did not dispute that these problems existed at MOCJ, especially under Chief of Staff and then Director, Marcos Soler.

However, because of MOCJ's special status, no meaningful action was taken to address the problem.

15. In, upon information and belief, retaliation for making such complaints and inquiries, Plaintiff had been set up to fail with a sham promotion to "Senior Program Manager", a position which had no subordinates, despite there being several non-senior "Program Managers" on the same team who should have been available, both in general and specifically to report upwards to Plaintiff. For example, in March of 2020, although Plaintiff made repeated requests for resources to be allocated to the Justice Initiatives team to facilitate his work on the re-entry team during the height of the COVID-19 pandemic, management intentionally failed to provide the requested resources.

16. This failure to provide adequate resourcing (human and fiscal) placed the Plaintiff in unstable and/or dangerous conditions and created a safety and health hazard for millions of New Yorkers.

17. In or about March 2020, Plaintiff was tasked with assisting with an Emergency Reentry Hotel project, which began on Rikers Island. The project entailed mixing with detainees who were recently released due to health complications and the rapid spread of COVID-19, especially in congregate care settings, such as Rikers Island. As a result of his assignment, both on Rikers Island and at the Emergency Reentry Hotels, Plaintiff potentially exposed himself to COVID-19 and was on-site several times before proper vendors, including security, were contracted. Plaintiff felt he had no choice but to offer his assistance with this project when his white colleagues, except one, refused to help, went AWOL and/or left New York City-State altogether.

18. In late June 2020, during a call with Dana Kaplan, Deputy Director of Close Rikers and Justice Initiatives, Plaintiff complained as follows, "I think MOCJ has issues with race. It has issues with white supremacy." He also said MOCJ was "operating like a plantation."

19. Additionally, on June 30, 2020, Plaintiff complained about the unsafe conditions at Rikers to MOCJ senior staff members Elizabeth Glazer, Susan Sommer, Marcos Soler, Karen Shaer, Dana Kaplan, Anna Calabrese as well as to Freya Rigterink. (Chief of Staff to First Deputy Mayor Dean Fuleihan). The email specifically stated that Plaintiff, **"will be flagging this matter outside of MOCJ, as I do not believe MOCJ is ethically equipped to deliver the justice that is incumbent within our title."**

20. After Plaintiff made these complaints and warnings about whistleblowing, Defendant's efforts to isolate, erase, intimidate and exclude him from significant projects increased.

21. For example, management excluded Plaintiff from participating in press pieces that would provide him with positive exposure, including, in one case, a press piece about an organization with which Plaintiff worked closely, the head of which organization had specifically asked that Plaintiff be included. The Plaintiff was also excluded from the "Year in Review", which is the office's annual summary of noteworthy work that was achieved. While the program that Plaintiff began was highly lauded and eventually replicated, Plaintiff is conspicuously absent from Defendant's record of the work.

Defendant's Admissions of Racism and White Supremacy Within MOCJ

22. When Plaintiff complained to HR's Lakisha Grant of racial bias and discrimination at MOCJ, Ms. Grant indicated she had heard similar complaints from other employees. She did not dispute that racism and racial bias is a problem at MOCJ, especially under Marcos Soler.

23. On or about June 11, 2020, in a text exchange with his supervisor Anna Calabrese, Plaintiff stated that, "People have behaved in disgustingly racist and/or biased ways during this crisis [at MOCJ]." Ms. Calabrese responded, "I hear you. *I agree with you*. And I am committed to do all I can to fight against the systems of *white supremacy within our office* and beyond" (emphasis added).

5

24. In an additional text message on June 11, 2020, Ms. Calabrese said to Plaintiff, "I really want you to take a break from the toxic MOCJ culture."

25. On a call on or about September 15, 2020, Ms. Calabrese referred to "the systemic racism in our office," thus acknowledging the existence of systemic racism at Defendant.

26. Despite his reports of racism within MOCJ, his many conversations with an HR representative about racism and racial bias within MOCJ, emails to First Deputy Mayor Fuleihan about bias at MOCJ and Defendant's own admissions that MOCJ has a problem with racism and white supremacy, Defendant took no action to correct the problem, and has retaliated against Plaintiff for reporting it.

27. Plaintiff continued to experience a hostile work environment as exhibited by the demeaning tone Marcos Soler used to speak to Plaintiff

28. Specifically, throughout the entire year of 2021, Marcos Soler would often question the intelligence of the Plaintiff although the Plaintiff earned a law degree. Marcos Soler did not question the intelligence of any of Plaintiff's white colleagues who were less educated than the Plaintiff. Plaintiff's objections and flags were substantiated by the announcement of a City Task Force to address slow nonprofit contractor payment.

29. Despite being aware of the racism and discrimination, Defendant failed to take appropriate remedial action and properly investigate Plaintiff's multiple complaints of discrimination and hostile work environment.

30. Defendant knew or should have known of the discriminatory and retaliatory conduct and failed to take corrective measures within its control.

31. Defendant and its staff, each collectively and individually, condoned, ratified, and supported the discriminatory work environment against Plaintiff.

32. The above conduct of Marcos Soler are just some examples of how Defendant and their employees regularly and continually harassed Plaintiff while employing Plaintiff.

33. Plaintiff was treated this way solely due to Plaintiff's race (Black and Latino) and because of his objections to the discriminatory and retaliatory actions taken against Plaintiff and organizations who help black and latino communities.

34. Defendant actions and conduct were intentional and intended to harm Plaintiff.

35. As a result of the hostile work environment and harassment created and perpetuated by Defendant, Plaintiff suffered and continues to suffer emotional distress.

36. Defendants unlawfully racially harassed, humiliated, embarrassed, degraded, and belittled Plaintiff.

37. Plaintiff has suffered damages as well as future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

38. Defendants acted maliciously, willfully, outrageously, and with full knowledge of the law.

39. As such, Plaintiff demands punitive damages as against the Defendant.

<u>Retaliatory termination</u>

40. Defendant retaliated against Plaintiff by terminating him for pursuing this litigation, and for whistleblowing against the Defendant, both regarding his treatment and the treatment of black and brown nonprofit organizations who hold NYC-based Health and Human Services contracts.

41. Plaintiff remained employed with MOCJ while he lodged his complaints internally, through the EEOC process, and after this matter was filed in this Court.

42. Before this matter was filed in Court, MOCJ General Counsel, Deanna Logan, served as lead counsel defending this matter.

43. Ms. Logan was also involved in and oversaw Plaintiff's day-to-day duties and responsibilities at MOCJ.

44. Ms. Logan submitted Defendant's Position Statement to the EEOC.

45. The EEOC copied Ms. Logan on its correspondence transmitting the Notice of Right to Sue letter to Plaintiff.

46. On May 6, 2021. Plaintiff filed the original Complaint in this matter (Dkt. No. 1).

47. After this matter was filed in Court, Ms. Logan remained actively involved in this litigation assisting with the defense of this matter.

48. In July of 2021, Plaintiff contacted First Deputy Public Advocate Nick Smith and reported MOCJ's malfeasance in its administration and registration of contracts.

49. Additionally, in July of 2021, Plaintiff emailed the NYC Comptroller's Office and reported MOCJ's malfeasance both with human and fiscal resources, particularly in the contract registration and budgeting processes.

50. In August of 2021, Plaintiff contacted First Deputy Public Advocate Nick Smith and reported MOCJ's malfeasance in administering contracts.

51. Additionally, in August of 2021, Plaintiff emailed the NYC Comptroller's Office and reported MOCJ's malfeasance in the administration, registration and budgeting of contracts.

52. On September 11, 2021, Plaintiff contacted First Deputy Public Advocate Nick Smith and reported MOCJ's malfeasance in administering and registering contracts.

53. Again, on September 11, 2021, Plaintiff emailed the NYC Comptroller's Office and reported MOCJ's malfeasance in the administration, registration and budgeting of contracts

54. On September 19, 2021, the parties participated in mediation, which was ultimately unsuccessful. Notably, Ms. Logan participated as a decision-maker, holding the purse-strings in the mediation, an act of bad faith.

55. On October 6, 2021, the parties participated in an Initial Pretrial Conference and entered into a discovery schedule. Plaintiff also served interrogatory and document demands, and notices of deposition.

56. On October 7, 2021 Plaintiff again reported MOCJ's malfeasance in budgeting, contracting and delivering services to minority communities in New York City to Nick Smith and the Comptroller's Office.

57. On October 8, 2021, Plaintiff engaged in a text message conversation with MOCJ's Director, Marcos Soler where the Plaintiff complained that MOCJ's budget and contract-registration process were flawed and biased against minority communities that rely on an efficient budgeting and contracting process to prevent public health and safety disasters like Rikers Island in 2021. In this text message exchange, the Plaintiff referenced a previous Department of Investigation finding of fault against MOCJ and threatened to report this additional malfeasance to First Deputy Mayor Dean Fuleihan and the Department of Investigation.

58. On October 13, 2021, one week after Plaintiff served discovery demands and deposition notices), Ms. Logan emailed Plaintiff falsely accusing him of failing to follow up regarding the status of various contracts for which Plaintiff was tasked to manage. Ms. Logan also removed Plaintiff from continuing to manage these contracts and required Plaintiff to provide a detailed summary of all work Plaintiff had done on these particular contracts.

59. Ms. Logan further conflated Plaintiff's duties and responsibilities with that of a "contracts manager/analyst" so to falsely blame and accuse him of not doing work that was outside the scope of his duties and responsibilities.

60. Ms. Logan then scheduled a meeting for the next day October 13, 2021.

61. Ms. Logan did this in retaliation for Plaintiff pursuing his claims through litigation and the discovery process and for the Plaintiff's whistleblowing activities.

62. Plaintiff responded to Ms. Logan that he had, in fact, followed up regarding the status of the contracts and had proof of his follow up attempts, including site-visits (both pre and post security-vendor contractual registration). Plaintiff also pointed out that Ms. Logan had conflated his duties and responsibilities with that of a contracts manager/analyst. This was done to plainly highlight that Ms. Logan was intentionally conflating and/or overstating Plaintiff's work responsibilities and his abilities to directly move contract registration forward. In light of this, Plaintiff asked to not have the meeting as scheduled.

63. Ms. Logan refused and ordered the meeting to proceed. On October 14, 2021, Plaintiff attended the meeting where Ms. Logan's false accusations were rebutted by Plaintiff.

64. On October 18, 2021, Defendants terminated Plaintiff in retaliation for participating in this litigation and for Plaintiff's Whistleblowing activities. In other words, had Plaintiff not engaged in Whistleblowing activities, flagging Defendant's personal and corporate contractual and administrative malfeasance, as well as gone forward with this case, Ms. Logan and Mr. Soler would not have terminated him.

## First Cause of Action for Retaliation
## Under Title VII of the Civil Rights Act of 1964
## (CITY OF NEW YORK)

65. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

66. Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

67. Defendant engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to unlawful employment practices, including discrimination in City contracts.

68. Defendant retaliated against Plaintiff by terminating him for moving forward with this lawsuit.

69. Plaintiff is entitled to the maximum amount allowed under this statute/law.

## Second Cause of Action for Discrimination
## Under the New York State Executive Law
## (CITY OF NEW YORK)

70. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

71. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status,

11

> marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

72. Defendants violated the section cited herein as set forth.

### Third Cause of Action for Retaliation
### Under the New York State Executive Law
### (CITY OF NEW YORK)

73. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

74. New York State Executive Law § 296(1)(e) provides that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

75. Defendants violated the section cited herein as set forth.

76. Defendants retaliated against Plaintiff

77. Plaintiff is entitled to the maximum amount allowed under this statute.

### Fourth Cause of Action for Discrimination
### Under the New York City Administrative Code
### (CITY OF NEW YORK)

78. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

79. The New York City Administrative Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived

12

> age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

80. Defendants violated the section herein as set forth.

**Fifth Cause of Action for Retaliation**
**Under the New York City Administrative Code**
**(CITY OF NEW YORK)**

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

82. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

83. Defendants violated the section cited herein as set forth.

84. Defendants retaliated against Plaintiff.

85. Plaintiff is entitled to the maximum amount allowed under this statute.

**Sixth Cause of Action for Vicarious Liability**
**Under the New York City Administrative Code**
**(CITY OF NEW YORK)**

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87. The Administrative Code of City of New York § 8-107(13) provides for employer liability for discriminatory conduct by an employee, agent or independent contractor. This sub section states:

> a. An employer shall be liable for an unlawful discriminatory practice

> based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
>
> b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.
>
> c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

88. Defendant violated the section cited herein as set forth.

### Seventh Cause of Action for Whistleblower Retaliation
### Under the New York State Labor Law §740
### (CITY OF NEW YORK)

89. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

90. Section 740 of the New York Labor Law, commonly referred to as the "whistleblower" statute, specifically prohibits retaliatory personnel actions by employers who disclose, object to, or refuse to participate in an unlawful activity, policy or practice of the employer that endangers the public health or safety.

91. The Plaintiff revealed, objected to and attempted to lawfully refuse to participate in the activities, policies and practices of the Defendant described above.

92. As a result of Plaintiff reporting and threatening to report Defendant's unlawful activities, policies and practices to the Department of Investigation, New York City Council Members, the Comptroller's Office, the First Deputy Mayor and the Public Advocate's Office, the Defendant terminated the Plaintiff from his employment.

93. Defendant terminated Plaintiff in direct response to his recurrent complaints about defendants' unlawful conduct and there existed a causal connection between such protected activities and the adverse employment action to which Plaintiff was subjected.

94. Defendant intentionally and willfully retaliated against Plaintiff by terminating his employment because he complained about defendants failure to protect and safeguard inmates at Rikers Island, the failure to protect himself and other vendors at the emergency reentry hotels operated by Defendant and the failure to provide proper and timely services to marginalized and minority communities in New York City.

95. Defendants' conduct was outrageous and malicious, was intended to injure Plaintiff's reputation, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

96. As a direct and proximate result of Defendant's wrongful actions, Plaintiff suffered and continues to suffer economic damage, severe mental anguish and emotional distress, including, but not limited to, stress, anxiety, depression, embarrassment, loss of self esteem, loss of appetite, loss of sleep, emotional pain and suffering, and other stress related ailments.

**PUNITIVE DAMAGES**

97. Plaintiff is entitled to the maximum amount allowed under this statute/law.

98. Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of

the law.

99. As such, punitive damages are appropriate as a result of Defendant's above-described conduct and Plaintiff demands Punitive Damages as against Defendant.

## **JURY DEMAND**

100. Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, New York State Human Rights Law, the New York City Administrative Code and the New York State Labor Law, in that Defendants discriminated against Plaintiff based on Plaintiff's race (Black), retaliated against Plaintiff due to his complaining of discrimination and Plaintiff's whistleblowing activities and created a hostile work environment;

B. Awarding damages to Plaintiff for all benefits resulting from Defendant's unlawful harassment, discrimination, retaliation, and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D. Awarding Plaintiff damages for damages which such employment entails;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff liquidated damages;

G. Awarding Plaintiff prejudgment interest;

H. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

I. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
March 18, 2022

**KEITH WHITE, PLLC**

By: _____/s/_____
N. Keith White
*Attorneys for Plaintiff*
198A Rogers Avenue
Brooklyn, New York 11225
(718) 403-9261
keith@keithwhitelaw.com